**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert HARROD, Defendant–Appellant.**

**No. 87–3147.**

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1988.

Decided Sept. 15, 1988.

Keith Spielfogel, Chicago, Ill., for defendant-appellant.

Stephanie Uhlarik, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, Jr. and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

This is a direct criminal appeal from a jury conviction, pursuant to a thirty-five-count indictment. The appellant, Robert Harrod, was convicted of one count of conspiracy to commit bank fraud and bank theft under 18 U.S.C. § 371, seventeen counts of bank fraud under 18 U.S.C. § 1344, and seventeen counts of bank theft under 18 U.S.C. § 2113. Harrod was sentenced to consecutive five-year and eight-year terms of incarceration with five years of probation, and was ordered to pay $305,-309 in restitution to the two banks that were targeted in the scheme.[1] On appeal,

---

1. Harrod received a five-year term of imprisonment for each of eighteen counts, to be served concurrently with each other. He also received an eight-year term for each of fifteen other

the appellant contends that the district court erred in admitting as evidence his previous involvements in the negotiation of stolen financial instruments. We will affirm the judgment of the district court.

## I

In the district court, the appellant was convicted of obtaining three stolen and forged checks [2] totaling $374,000 from the Land Title Association, and devising a scheme whereby other individuals deposited these checks in federally-insured bank accounts. These individuals [3] then withdrew these funds in cash, keeping approximately twenty-five percent of the cash and tendering the remainder to the appellant. The jury convicted Harrod of violating 18 U.S.C. § 371 [4] (conspiracy to commit an offense against the United States), 18 U.S.C. § 1344 [5] (scheme to defraud a federally-insured financial institution), and 18 U.S.C. § 2113 [6] (bank robbery and incidental crimes).

Prior to trial, the appellant had filed a motion *in limine* to preclude admission of evidence regarding his previous involvement in a stolen check scheme in 1981, his 1984 plea agreement pertaining to that scheme, and his involvement in a stolen bond scheme in 1984. The district court denied the appellant's motion *in limine*, and the appellant now claims that the district court committed reversible error.

## II

When the trial judge permitted the evidence of Harrod's prior acts to be introduced as evidence, she carefully limited the purpose for which the evidence could be used. Immediately preceding the introduction of the prior acts evidence, she instructed the jury: "[T]his evidence that you're going to hear can only be considered by you as it relates to defendant Robert Harrod.... And it can only be considered by you on the question of Mr. Harrod's intent, plan and knowledge and is to be considered

counts, to run concurrently with each other but consecutively to the five-year terms on the other eighteen counts. The sentences on two other counts were suspended and the appellant was placed on a five-year term of probation, to run consecutively to all other sentences. In addition, the district court assessed a $50.00 fine for each of the thirty-five counts. *Judgment and Probation/Commitment Order*, AO–245 (dated December 10, 1987).

2. The three stolen checks were in denominations of $148,000, $64,000, and $162,000.

3. Charles Beyer, one of the chief witnesses for the Government, deposited the stolen checks which he received from Harrod into various bank accounts that Beyer had set up in the name of A–1 Construction Company. Beyer then withdrew the money in the form of cashier's checks which were payable to himself, Bill Lewis or Audrey Eichenberger. Although Beyer did not know either Lewis or Eichenberger, he made the checks out to them at the instigation of Harrod. For each check that he cashed, Beyer received twenty-five percent and the remainder was ceded to Harrod.

4. 18 U.S.C. § 371 provides: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more

than $10,000 or imprisoned not more than five years, or both."

5. 18 U.S.C. § 1344(a) states:
Whoever knowingly executes, or attempts to execute, a scheme or artifice—
(1) to defraud a federally chartered or insured financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $10,000, or imprisoned not more than five years, or both.

6. 18 U.S.C. § 2113(b) provides in part: "Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, managment, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both...."
18 U.S.C. § 2113(c) states: "Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, credit union, or a savings and loan association in violation of subsection (b), knowing the same to be property which has been stolen shall be subject to the punishment provided in subsection (b) for the taker."

by you only for this limited purpose." R 8–153. Again, immediately before the jury was dismissed to deliberate, she instructed, "You have heard evidence of acts of the defendant Robert Harrod other than those charged in the indictment. You may consider this evidence only on the question of defendant Robert Harrod's intent, plan and knowledge. This evidence is to be considered by you only for this limited purpose." R 13–585. While FED.R.EVID. 404(b) permits the presentation of other acts for these limited purposes, the appellant contends that the prior acts evidence does not go to any matter in issue, and was irrelevant and prejudicial.

In *United States v. Shackleford*, 738 F.2d 776 (7th Cir.1984), this Court established a four-part test for determining the admissibility of other acts evidence. Evidence of prior or subsequent acts can be introduced if:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue ..., (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

738 F.2d at 779.

Our decision in *Shackleford* integrates the concerns of both FED.R.EVID. 404(b)[7] and 403.[8] Rule 404(b) prohibits the introduction of other acts evidence if it is introduced to show the defendant's bad character, or to indicate the defendant's propensity to commit the alleged crime. *See, e.g.,*

*Shackleford*, 738 F.2d at 779; *United States v. Liefer*, 778 F.2d 1236, 1241 (7th Cir.1985). However, Rule 404(b) does not bar such evidence if it is used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Because evidence of other acts is potentially prejudicial and open to the danger of jury misuse, the trial court has the responsibility of carefully evaluating the tendered evidence to ensure that its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant. *See Liefer*, 778 F.2d at 1241; *United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir.1987); *Shackleford*, 738 F.2d at 779. This is in accord with the Rule 403 proscription against evidence which will cause "unfair prejudice," or an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED.R. EVID. 403, *Notes of Advisory Committee on Proposed Rules*. Because the trial judge is "much closer to the pulse of a trial," she is accorded broad discretion in balancing the probative value of the evidence against its prejudicial value. *See United States v. Juarez*, 561 F.2d 65, 71 (7th Cir.1977). Thus, her decision to admit or exclude the other acts evidence is reversible only for abuse of discretion. *See United States v. Chaimson*, 760 F.2d 798, 808 (7th Cir.1985) (quoting *United States v. Brown*, 688 F.2d 1112, 1117 (7th Cir.1982)); *Liefer*, 778 F.2d at 1244.

The appellant challenges the admission of the 1981 stolen bond scheme and his 1984 plea agreement by alleging that three of the four prongs outlined in *Shackleford* are not satisfied here.[9] First of all, he

---

7. FED.R.EVID. 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

8. FED.R.EVID. 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

delay, waste of time, or needless presentation of cumulative evidence."

9. The Supreme Court has recently determined that similar acts evidence "should be admitted if there is *sufficient* evidence to support a finding by the jury that the defendant committed the similar act." *See Huddleston v. United States,* — U.S. ——, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988) (emphasis added). This suggests that the appellee need not meet the "clear and convincing" test required by *Shackleford* in order to admit the prior acts evidence. However, the appellant did not contest this prong of the

claims that his 1981 acts do not go to any matter in issue such as intent, plan, or knowledge. In the present case, Harrod's defense rests on his claim that he did not participate in the bank fraud scheme. He thus contends that he did not put the question of intent into issue, so that the evidence should not have been introduced for that purpose. Because he allegedly did not put the issue of "knowledge" into dispute, Harrod also believes that the 1981 acts should not be admissible. The appellant makes similar arguments with regard to the admissibility of his 1984 stolen bond scheme. Again, Harrod contends that intent and knowledge were not issues involved in this case, so that the 1984 acts could not be admitted on those bases.

Second, Harrod contends that the 1981 and 1984 prior acts are too dissimilar and remote in time to be admissible under Rule 404(b). Because the 1981 scheme involved theft from the mail as well as from a bank, and occurred five years prior to the actions charged here, the appellant argues that the acts are too dissimilar and removed in time. He also alleges that the 1984 acts are not similar enough to the offense charged in the present action to be admissible to show a pre-existing plan. Although one of the Government's major witnesses in the pending action, Charles Breyer, was a party to both this transaction and the 1984 stolen bond scheme, the appellant claims that the expertise required in the 1984 scheme makes the acts too dissimilar to be used to show knowledge or plan in this case.

Finally, Harrod contends that the 1984 plea agreement should not have been admitted because it was irrelevant and prejudicial. Moreover, he claims that both the 1981 and 1984 other acts evidence were not reasonably necessary to meet the Government's burden of proof because the Government had sufficient evidence to establish its case. Consequently, he argues that the prior acts evidence was more prejudicial than probative.

### A

■ To support his argument that the 1981 and 1984 acts should not be admitted

to show his intent or knowledge of the stolen check scheme with which he is charged, the appellant suggests that a split in the decisions of this Court exists. Specifically, he cites *United v. Berkwitt*, 619 F.2d 649 (7th Cir.1980), and *United States v. Feinberg*, 535 F.2d 1004 (7th Cir.), *cert. denied*, 429 U.S. 929, 97 S.Ct. 337, 50 L.Ed. 2d 300 (1976), for the proposition that FED. R.EVID. 404(b) requires the issue of intent to be disputed by the defendant-appellant before evidence of other acts may be introduced. However, he acknowledges that other decisions, such as *Liefer*, 778 F.2d at 1236, and *United States v. Brantley*, 786 F.2d 1322 (7th Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986), permit admission of prior acts evidence whenever the defendant is charged with a specific-intent crime.

Our analysis indicates that when the crime charged is one requiring a showing of specific intent, "intent" need not be disputed by the defendant before Rule 404(b) evidence can be introduced. In specific-intent crimes, intent is an essential and material element to be proven, and thus necessarily becomes a matter in issue. *See Liefer*, 778 F.2d at 1242 (citing *Shackleford*, 738 F.2d at 781). *See also United States v. Gruttadauro*, 818 F.2d 1323, 1327–28 (7th Cir.1987); *United States v. Hudson*, 843 F.2d 1062, 1067 (7th Cir.1988). Assuming that the other requirements of Rules 404(b) and 403 are met, the Government may introduce evidence of other acts to establish intent in its case-in-chief because the Government is obliged to prove each element of the crime charged beyond a reasonable doubt. *See Shackleford*, 738 F.2d at 781. *See Hudson*, 843 F.2d at 1067–88; *Chaimson*, 760 F.2d at 806.

Our opinions in *Berkwitt* and *Feinberg* do not deviate from this analysis. In *United States v. Berkwitt*, this Court enumerated four requirements before evidence of prior acts could be submitted. This Court stated that such evidence could be admitted on the issue of the defendant's intent or knowledge if:

*Shackleford* test, and we need not address this    issue here.

(1) the prior act is similar enough and close enough in time to be relevant, (2) the evidence of the prior act is clear and convincing, (3) the probative value of the evidence outweighs the risk of prejudice, and (4) *the issue to which the evidence is addressed is disputed by the defendant.* 619 F.2d at 655 (citing *United States v. Feinberg,* 535 F.2d at 1009) (emphasis added). Although the fourth element of *Berkwitt* would appear to support the appellant's claim, our careful analysis of *Berkwitt* indicates that its fourth prong is essentially the same as the *Shackleford* requirement that the evidence must be directed to a matter in issue. In *Berkwitt* itself, this Court found that the fourth prong was satisfied because "knowledge that the property was stolen is an essential element which the Government was required to prove as part of its *prima facie* case." 619 F.2d at 655. This Court did not engage in an analysis of whether the defendant disputed the knowledge/intent issue, but merely noted that because intent was an essential element, the Government could introduce the prior acts evidence.

*Shackleford* was decided four years after *Berkwitt,* and clarifies *Berkwitt* by rewording the fourth prong articulated in *Berkwitt.* *Berkwitt* merely emphasizes that if intent is not an essential element of the crime, then the defendant must raise lack of intent as a defense in order to make intent a matter in issue. *See, e.g., Liefer,* 778 F.2d at 1242. As we stated in *Shackleford:* "[W]hen intent is only a formal issue, so that proof of the proscribed act gives rise to an inference of intent, then unless the government has reason to believe that the defense will raise intent as an issue, evidence of other acts directed toward this issue should not be used in the government's case-in-chief and should not be admitted until the defendant raises the issue." 738 F.2d at 781. *See also Liefer,* 778 F.2d at 1242; *United States v. Weidman,* 572 F.2d 1199, 1202 (7th Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed. 2d 113 (1978).

Our decision in *United States v. Feinberg* does not cast a shadow on our analysis. In *Feinberg,* the defendant contested the Government's use of prior acts evidence in its rebuttal. The prior acts were virtually identical to the offense of mail fraud (18 U.S.C. § 1341) with which the defendant was charged. This Court found that because the defendant himself introduced the issue of his criminal intent, the issue of intent was clearly in dispute. Thus, the Government did not violate Rule 404(b) by introducing evidence of prior acts in its rebuttal. Because the evidence was used in rebuttal rather than in the Government's case-in-chief, it is clear that the Government was not using the evidence to prove an essential element of the crime, *i.e.,* intent. Where the evidence of other acts is not used to prove an essential element of the offense, our past decisions have established that the defendant must put the issue of intent into dispute before such evidence can be admitted. *See, e.g., Liefer,* 778 F.2d at 1242; *Shackleford,* 738 F.2d at 781. *Feinberg* thus does not support Harrod's proposition that the issue of intent must be disputed by the appellant even when a specific-intent crime is charged.

■ In the case before us, specific intent is an essential element of bank theft under §§ 2113(b) and (c), *see supra,* n. 6, and bank fraud under § 1344(a), *see supra,* n. 5. As we stated in *Liefer:* "Intent is never merely a 'formal issue' when the defendant is charged with a specific intent crime." 778 F.2d at 1242. The appellant cannot "remove intent as an element of the Government's proof by merely raising as a defense that he did not participate in the crime charged." *Chaimson,* 760 F.2d at 808. We therefore conclude that the challenged other acts evidence was admissible on the issue of the appellant's intent.

**B**

■ Harrod next contends that the prior acts evidence fails to satisfy the second prong of the *Shackleford* test. In support of his argument, Harrod claims that the 1981 stolen check scheme did not exhibit any unique characteristics to establish an alleged *modus operandi.* He further

claims that the 1981 acts are too remote to be considered because they occurred five years prior to the acts charged in the indictment. Harrod disputes the admission of the 1984 acts for the same reasons. Although Harrod acknowledges that Beyer was involved in both the 1984 stolen bond scheme and the check scheme now pending before us, he claims that the 1984 prior acts required more expertise and are thus too dissimilar to the acts charged here. We disagree. An identical technique was used in both the 1981 stolen check scheme and the stolen check scheme here. In both schemes, the appellant submitted stolen and forged checks to third parties, who would then deposit and withdraw the stolen funds from their bank accounts. While a different type of fund was involved in the 1984 stolen bond scheme, the overall pattern and even one of the parties involved, Beyer, were the same as in the acts now charged. The prior acts thus showed not only a pre-existing scheme, but also the appellant's knowledge and intent. As this Court stated in *Shackleford:* "Only when the other act shares truly distinctive features with the crime with which the defendant is charged can it support the inference that the defendant probably committed the crime." 738 F.2d at 783. The prior acts submitted here satisfy this standard.

The appellant acknowledges in his brief that this Court has not developed a rigid rule to determine when a prior act is close enough in time to be relevant. "Questions about 'how long is too long' do not have uniform answers; the answers depend on the theory that makes the evidence admissible." *Beasley,* 809 F.2d at 1277. In this case, the prior acts were so similar in character that we cannot conclude that they are too remote in time to the acts charged in the indictment. *See Chaimson,* 760 F.2d at 807 (finding that a similar act that occurred five years before the acts charged was sufficiently related in time to satisfy FED.R.EVID. 404(b)); *United States v. De-Castris,* 798 F.2d 261, 265 (7th Cir.1986) (determining that use of other acts occurring ten years before the charged crime is permissible).

### C

The appellant's final contentions go to the prejudicial impact of the 1984 plea agreement, as well as the 1981 and 1984 schemes that were introduced as evidence. He asserts that the probative value of the other acts evidence was substantially outweighed by the danger of unfair prejudice in violation of Rule 403. As we stated in *United States v. Brown,* 688 F.2d 1112 (7th Cir.1982), "The trial judge, who saw and heard the evidence firsthand, can best balance probity and prejudice, and the reviewing court may reverse only upon a showing of abuse of discretion." *Id.* at 1117. *See also Weidman,* 572 F.2d at 1201–02; *Chaimson,* 760 F.2d at 808. The transcript reveals that the trial judge appropriately balanced the probity versus the prejudicial impact of the other acts evidence. R 1–9. However, the appellant contends that the Government had sufficient evidence to establish its case without the introduction of the other acts evidence. Harrod points to our decision in *United States v. Dolliole,* 597 F.2d 102 (7th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979), in which we stated that if the Government has "ample evidence to establish an element of the crime, . . . the risk of prejudice which accompanies the admission of such evidence will not be justified." *Id.* at 106 (footnote omitted). In *Dolliole,* we noted that it is "not easy to formulate precisely when the quantum of evidence eliminates the need for the prior crime evidence." *Id.* at 106. However, we ultimately concluded in *Dolliole* that while the Government presented other evidence aside from the prior acts, "the prior crime evidence contributes to 'more dependable proof of his [the defendant's] knowledge and intent' and was therefore 'reasonably necessary' to the government's case." *Id.* at 106 (quoting *United States v. DiZenzo,* 500 F.2d 263, 266 (4th Cir.1974)).

In the case before us, we conclude that the prior crime evidence was reasonably necessary to the Government's case. As in *Dolliole,* the other acts evidence provided additional reliable indicia of Harrod's intent. In order for the Government to es-

tablish Harrod's *modus operandi* and intent, it must be able to provide evidence of his past acts and the similarity in their characteristics to the acts charged. In light of the trial judge's limiting instruction to the jury, which carefully delineated the purpose of the prior acts evidence, we cannot say that the probity of the evidence was outweighed by its prejudicial effect.

### III

Because we find that the appellant's challenges to admissibility of the prior acts evidence are not sustainable, we affirm the judgment of the district court.

AFFIRMED.